No. 29,781.

J. A. McGuire, *Appellee,* v. W. R. Gunn, W. K. Calhoun et al., *Appellants.*

(300 Pac. 654.)

Opinion filed July 3, 1931.

*Carr W. Taylor, Harry H. Dunn,* both of Hutchinson, and *Douglas Hudson,* of Fort Scott, for the appellants.

*F. Dumont Smith, J. N. Tincher* and *Don Shaffer,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

Sloan, J.: This is an action to rescind a contract on the ground of fraud and to recover the amount paid thereunder. The plaintiff prevailed, and the defendants appeal.

The Hulland-Gunn-Holt Motor Company was a corporation organized under the laws of Kansas and engaged in business at Hutchinson, Kan., and prior to July 4, 1927, W. R. Gunn was its president and owned one-third of its stock; Fred Holt was the secretary-treasurer and manager and owned one-third of its stock, less one share;

and R. G. Hulland owned about one-third of the stock; W. K. Calhoun and J. R. Beeching each owned one share, and these parties were the directors of the company. In June, 1927, Gunn mentioned to a Mr. Gordon that he desired to sell his interest in the company. Gordon was acquainted with the plaintiff, who was an experienced and successful Chrysler salesman at Kiowa, and he arranged a meeting between Gunn and the plaintiff in Hutchinson on July 3, 1927. They looked over the property, which included new cars in the showroom, used cars, repairs and the repair shop. McGuire was interested and a conference was held the next morning at the Lassen hotel, which resulted in the drawing and execution of a contract by the terms of which the defendants agreed to sell to the plaintiff 225 shares of the capital stock of the company of the par value of $100 per share for the sum of $17,500, of which amount $1,000 was payable on the execution of the contract, $4,000 July 14, 1927, and the balance in deferred payments, and that the plaintiff would assume an active interest in the business of the company within fifteen days. The plaintiff discovered the alleged fraud a few days after the $5,000 payment was completed and the deferred payments arranged for, whereupon he tendered back to the defendants the stock he had received and demanded the return of the $5,000, which tender and demand were refused. This suit followed.

It is alleged in the petition that the defendants, W. R. Gunn, president of the company, and its acting manager, Fred Holt, and W. K. Calhoun conspired together and made false and fraudulent representations to the plaintiff for the purpose of inducing the plaintiff to purchase the stock; that they represented that the corporation owned a contract with the Chrysler automobile manufacturers and that the plaintiff would receive the full benefit of such contract, through the purchase of the stock; that they knew at the time the Chrysler Manufacturing Company would not permit anyone to have control of the Chrysler agency; that they knew there was an agreement and understanding that Fred Holt, personally, would control the Chrysler agency contract or franchise; that they knew Holt did not intend to permit the plaintiff to manage and control the corporation; that they presented a false and fraudulent statement of the condition of the corporation to the plaintiff, showing an item of $63,000 as bills receivable and an asset of the corporation, which, in truth, was a liability and not an asset, and asked judgment for $6,000. An answer was filed by the defendants, who

are appellants, which was in effect a general denial. The corporation was a party and filed a separate answer.

The plaintiff's evidence tended to show that after looking over the property on July 3, 1927, the plaintiff, his brother, Harry McGuire, and the defendants met at the Lassen hotel in Wichita, on July 4, 1927; that Gunn represented to the plaintiff that he controlled the Chrysler franchise; that defendants presented to the plaintiff a financial statement of the company showing an asset listed as bills receivable in the amount of $63,000; that relying on these statements as true he signed the contract and paid the $5,000 provided for in the contract; that after the payment of the $5,000 the plaintiff learned that the item of $63,000 was not an asset, but was in fact a contingent liability representing notes which had been taken on the sale of cars and indorsed and sold by the company; that Holt, one of the officers of the company, had a contract to manage the corporation, which contract was produced, identified as exhibit L and introduced in evidence. The contract was dated April 1, 1927, in which Holt was first party, R. T. Hulland second party, and W. R. Gunn third party. It provided that second party resign as vice president, and that he obtain the resignation of J. R. Beeching as a director and the surrender of his stock; that the third party resign as president and obtain the resignation of W. K. Calhoun as a director and the surrender of his stock. It further provided:

"Said party of the first part is to name the two directors of his own choosing to fill the places vacated by resignation.

"Said party of the first part is to have entire charge of the affairs of the corporation, subject to the will of the board of directors of the firm. He is to accept a salary not to exceed one hundred dollars ($100) per week, for services for at least one (1) year from this date, subject to the will of the board of directors."

At the close of the plaintiff's evidence the defendants demurred, which demurrer was overruled as to the appellants and sustained as to the corporation.

The defendants' evidence tends to show that at the conference held on July 4, 1927, at the Lassen hotel, the condition of the company was fully exhibited to the plaintiff, who was assisted in the conference by his brother and his attorney; that he was furnished a balance sheet showing the financial condition of the company as of May 31, 1927, which balance sheet did not contain an item of $63,000 listed as an asset, but it did show the value of the capital,

including surplus and profits, to be $43,000.83; that $1,000 of the purchase price was paid the date the contract was signed, $2,000 was paid July 7, 1927, and the balance of the $5,000 was paid July 12, 1927, and in this time the plaintiff had the opportunity and did make some investigation of the company through his advisers, and that Gunn did not at any time represent to the plaintiff that he controlled the Chrysler franchise.

The defendants offered in evidence the by-laws of the company, which, among other things, provided:

"The stockholders shall have power, by a majority vote at any such meeting, to remove any director or officer from office."

Also a copy of the Chrysler franchise, which provided, among other things:

". . . either party shall be at liberty to cancel and annul this agreement upon fifteen (15) days' written notice . . ."

On this evidence, under proper instructions, the jury returned a general verdict in favor of the plaintiff and made the following special findings:

"SPECIAL QUESTIONS TO THE JURY.

"1. Did the plaintiff know at the time he purchased the 225 shares of stock from the defendants, that the Chrysler contract with the Hulland-Gunn-Holt Motor Co. contained a cancellation clause? Yes.

"2. Was the plaintiff informed in the conference at Wichita on July 4, 1927, by Mr. Gordon that the Chrysler franchise was not a salable asset? Yes.

"3. Did W. R. Gunn represent to the plaintiff that he controlled the Chrysler franchise? Yes.

"4. Did the defendants, W. R. Gunn and W. K. Calhoun, submit to the plaintiff and his attorney, F. F. Perry, and his brother, a balance sheet showing the condition of the Hulland-Gunn-Holt Motor Co. as of May 31, 1927? Yes.

"5. Did said balance sheet show net assets in the sum of $43,000.83? Yes.

"6. Did the plaintiff purchase said 225 shares or one-half of the stock from the defendants for $17,500? Yes.

"7. Did the plaintiff place said purchased stock in the Citizens National Bank of Fort Scott, Kan., as collateral security for the payment of his notes given to defendants in part payment of the purchase price for said stock? Yes.

"8. Did the plaintiff, as agent for Chrysler cars, sell thirty-three of them during the year preceding his purchase of the defendant's stock, at Kiowa, Kan.? Thirty-three cars as subagent.

"9. Did the defendants, W. R. Gunn and W. K. Calhoun, make any false representations to the plaintiff for the purpose of inducing the plaintiff to buy their stock? Yes.

"10. If you answer the last question in the affirmative, then state what

false representations were made by either of them for that purpose. Failure to produce exhibit L or notify plaintiff of its contents.

"11. Did the defendants, W. R. Gunn and W. K. Calhoun, authorize and empower the plaintiff to vote their stock during the year 1927? Yes."

The appellants contend that the evidence does not show actionable fraud, and that the court erred in overruling their demurrer to the evidence and in failing to instruct the jury to find for the defendants.

Actionable fraud includes any false representation on a material fact, knowingly or recklessly made, which is of such character that the party to whom it is made has a right to rely upon it, and does rely upon it to his injury. A representation is material where it relates to some matter which is so substantial and important as to influence the party to whom it is made. (14 C. J. 602, 605.)

The court early in the trial stated to counsel:

"The points that I am going to submit to the jury are these alleged misrepresentations; first, that the defendant W. R. Gunn controlled the Chrysler Motor Company franchise; and second, that $63,000 notes were listed as assets on the financial statement of the corporation."

The misrepresentations were material and of such character that the appellee had a right to rely upon them. He was attempting to buy a solvent corporation and the nature of its assets were of vital importance, and the appellants, who were the officers of the corporation, would be expected to know the nature and character of the assets of their company. The appellee was a Chrysler salesman, and because of his ability he was selected by the appellants, through their agent, as a prospective purchaser of the corporation. His salesmanship was of no value to him unless the purchase of the corporation carried with it the control of the Chrysler franchise. These representations were supported by the evidence of the plaintiff and his brother, and it was also shown by substantial evidence that the statements were false. It is true that the defendants denied that the statements or representations were made. There was substantial evidence on both sides of the question, which presented to the court a controverted question of fact, and this was a matter to be determined by the jury. The court properly held that the evidence of the appellee, if believed by the jury, would entitle him to recover, and it was for the jury to determine which of the parties was telling the truth.

The appellants earnestly insist that the special findings made by

the jury exonerate the appellants of fraud. The general verdict was for the appellee and was a finding in his favor of every fact necessary for his recovery. The special findings made by the jury must be harmonized with the general verdict, if that can reasonably be done, and every reasonable presumption will be indulged in to support the general verdict. If the special findings cannot be reconciled with the general verdict and are inconsistent therewith the general verdict must be set aside and judgment rendered in accordance with the special findings. (See *Babcock v. Newby*, 133 Kan. 48, 298 Pac. 804, and cases there cited.)

The general verdict in this case is a finding that the appellants made the representations alleged in the petition; that such representations were false and known to be false by the appellants and that the appellee relied thereon in the execution of the contract and in the payment of the $5,000. The jury found specially that the Chrysler franchise was not a salable asset; that Gunn represented to the appellee that he controlled the Chrysler franchise; that the appellant submitted to the appellee a balance sheet showing the condition of the company as of the 31st of May, 1927, and that this sheet showed the net assets of the company to be $43,000.83; that the appellants made false representations to the appellee for the purpose of inducing him to buy their stock, and that such false representations consisted in the "failure to produce exhibit L or notify plaintiff of its contents."

Can the special findings be reasonably harmonized with the general verdict? The evidence with reference to the $63,000 asset is to the effect that a statement was presented to the appellee containing this item and that he relied upon it as being one of the assets of the company. Appellants' evidence is that they presented a true statement of the conditions of the company as of May 31, and no item of $63,000 was listed in the statement, but that the statement presented by them showed the net value of the assets of the company to be $43,000.83. This testimony, when considered in connection with findings numbered four and five, does exonerate the appellants of any fraud with reference to the $63,000 item, but this does not annul or set aside the general verdict as to the other finding of fraud.

The petition alleged that the appellants represented that the corporation owned a contract with the Chrysler automobile manufacturers and that the appellee would receive the full benefit of such contract through the purchase of the stock. The general verdict,

which is supported by findings numbered three and nine, established the fact that the appellants did make the representation that they controlled the Chrysler franchise and that the purchase of the stock of the corporation would vest in the appellee the control of the franchise. This, as we have already seen, was the principal inducement to the appellee in the purchase of the stock, as he was a salesman and expected to make his profits through the franchise. The appellee knew the conditions of the franchise; that is, that it was subject to cancellation by the Chrysler company on fifteen days' notice. But this was not the basis of the misrepresentation—the misrepresentation was that Gunn, either personally or through the corporation, controlled the franchise, and was able to deliver it to appellee through the sale and transfer of the stock. It is true the evidence indicates that the appellee knew before he made the final payment of the $5,000 that the Chrysler company would make some investigation of him before the franchise would be continued with the corporation under his management, but the appellee did not know, and the jury so found, that there was an outstanding contract with Holt which took the management of the corporation, and through it the control of the franchise, away from the stock owned by Gunn and Calhoun, which the appellee contracted to purchase. The fraud, therefore, was in the failure of the appellants to divulge to the appellee the fact that they were selling him stock which did not control the corporation and consequently the appellee was purchasing not the control of the corporation as he had a right to expect under the contract, but was purchasing stock fettered with a contract which deprived it of its efficacy in the management of the corporation. The appellants urge that since the appellee had the right to vote more than a majority of the stock, that under the by-laws of the corporation he could elect his own board of directors and defeat the contract held by Holt. We are not called upon to pass on the validity of the contract between Holt and the appellants and its binding force, if any, on the appellee. It is enough, for the purpose of this case, to find that the appellee did not acquire such title to the stock as would give him the benefits flowing from the Chrysler franchise.

We hold that the special findings of fact were supported by substantial evidence and are not inconsistent with the general verdict.

The appellee was permitted, over the objection of the appellants, to testify to a conversation with a representative of the Chrysler

company in the presence of Holt, who was the manager of the defendant corporation. The testimony was a part of appellee's examination in chief and at the time the court properly overruled the objection. No request was made, after the demurrer was sustained as to the corporation, to strike this testimony out, or that the jury be instructed not to consider it, and for this reason the ruling of the court is not reversible error.

Appellants also complain of the admission of testimony with reference to where the appellee intended to procure the funds with which to carry out the contract. This testimony was immaterial, but we cannot agree that it was so prejudicial as to amount to reversible error.

The judgment is affirmed.